647 So.2d 296 (1994)
AL-SITE CORPORATION, a Delaware corporation, Appellant,
v.
Gianbattista Origoni DELLA CROCE and Maria Tonucci, as partners of Gianni, Origoni, Tonucci, a partnership, Appellees.
No. 93-2433.
District Court of Appeal of Florida, Third District.
December 14, 1994.
*297 Joseph C. Segor, Raab & Strader, Miami, for appellant.
Carlson & Bales and Curtis Carlson, Hilary Goodman and Julie A. Moxley, Miami, for appellees.
Before SCHWARTZ, C.J., and NESBITT and BASKIN, JJ.
SCHWARTZ, Chief Judge.
Ostensibly, this case involved a simple claim by the appellee, an Italian law firm, for legal services rendered to the appellant corporation. Unfortunately, but not unusually, the character attacks, name calling, and grossly inappropriate language which pervaded the final argument of the plaintiff's counsel[1] turned what occurred below into *298 something less than a legitimate trial, and a great deal less than a fair one. As we have repeatedly said, we will not  even when, as here, there is no timely objection  permit the result of such a process to stand. Kaas v. Atlas Chem. Co., 623 So.2d 525 (Fla.3d DCA 1993); George v. Mann, 622 So.2d 151 (Fla.3d DCA 1993); Parkansky v. Old Key Largo, Inc., 546 So.2d 1143 (Fla.3d DCA 1989); Borden, Inc. v. Young, 479 So.2d 850 (Fla.3d DCA 1985); Simmons v. Baptist Hosp. of Miami, Inc., 454 So.2d 681 (Fla.3d DCA 1984); Schreier v. Parker, 415 So.2d 794 (Fla.3d DCA 1982). Accordingly, the judgment under review is reversed for a new trial.[2]
Reversed.
NOTES
[1] The following was said during the opening portion of the final argument:

[MR. CARLSON] Now you say to me, wait a minute. The bills are only $51,000 and I say to you, hey, look, these people could have paid these bills. These people could have acted in good faith. What really happened here is this man jerked these people around like you don't know. That is what happened here. (Tr. 654-55).
* * * * * *
They decided to put us up and to make us jump through the hoop, make us jump through those rings and make us have to suffer. Well, sometimes you have to pay the piper when you play games and that's what these folks did. They have played games and now they are going to pay the piper. (Tr. 655).[e.s.]
* * * * * *
Now, why should you do this? I mean, why did it get to the way it got? Let me explain what I believe the evidence has shown. Mr. Felkowitz here, who is a small man, not  I don't mean height-wise. I mean characterwise. He is a small person. And here he is working in a big family corporation with Al Nyman or Morton Nyman. You saw him. He is a tough son of a gun. He is a bully. He has got his son Michael Nyman also working for the Company. It's a family-run company and Mr. Felkowitz wants to impress. He wanted to rise through the ranks. He wanted to become a big shot, and so in 1989 he is given the responsibility for developing an international market. Up to this point he has been in charge of the typical things such as the accounting and the computers and things like that. But now it's sort of his big shot to break through, to become in charge of the international development. And Italy is the first country he is going into. If you read these letters you can see that this man was scared out of his mind that he was going to screw up. He had these lawyers going all over the place. He had them doing all kinds of work. He was writing these partners. He was saying you've got to get back to me. (Tr. 656-57).[e.s.]
* * * * * *
Well, it is not the law firm's fault that he is a scared little bunny. It's not their fault that he made them do all of this work. It's not their fault that Morton Nyman is a bully. He did this because he was scared and that 
MR. RAAB: Excuse me. Where is the testimony about Morton Nyman being a bully?
THE COURT: They will determine what was said in the testimony. (Tr. 657-58).[e.s.]
* * * * * *
On rebuttal, counsel continued:
[MR. CARLSON] Number two, why did they have to go to Legal Guards? Why did they have to find a guy at $275 an hour? The answer is because they couldn't find anybody in Miami who is a real lawyer that practices international law that would come in and substantiate this. They had to go to Tampa, Florida, to find some guy and the only guy they could find is one who expected $275 an hour from them to come up with the ridiculous figure like this. When he said that figure, I wanted to say, are you out of your mind? So it's off the wall, it's ridiculous. They are that kind of company. What they are hoping you will do is split the difference. That is what they are hoping. They get some jerk to come in and give you a low ball hoping you people will try to split the difference in between. Don't do it. (Tr. 683-84).[e.s.]
* * * * * *
Another letter mentioned that they billed $2,000. They are spending a lot of money. And what happens? Nothing happened. It got busted, if you will. The transaction never went forward. So why haven't they paid the legal fees? Because they already spent a ton a money. They want to screw the lawyers. They are the easy ones to screw.
One other point, I don't know if you picked this up. When I asked Mr. Felkowitz weren't you going to have to admit to being liable or accountable to a debt of $2 million to do the roll out for the advertising and things like that?
Hey, what he was saying was they were going to form a shell corporation that was going to take on this debt if the business folded and that is what his attitude has been. You come over to the United States and sue me. Well, that is what we had to do. That is what we did and that is why I don't want there to be any reduction. Yes, he charged one hour to prepare the bill. It was $200. Ordinarily we would say wipe it off, but I don't want you to wipe it off. (Tr. 685-86).[e.s.]
[2] We find no other harmful error.